1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BALMUCCINO, LLC,

                    Plaintiff,

        v.

STARBUCKS CORPORATION,

                    Defendant.

CASE NO. 2:22-cv-01501 JHC

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT

# I

## INTRODUCTION

This matter comes before the Court on Defendant Starbucks Corporation's Motion to Dismiss Plaintiff Balmuccino, LLC's First Amended Complaint. *See* Dkt. # 27. The Court has considered the materials filed in support of, and in opposition to, the motion, as well as the balance of the case file and the applicable law. Being fully advised, the Court GRANTS Starbucks's Motion to Dismiss and DISMISSES Balmuccino's First Amended Complaint (FAC) with prejudice.

# II

## BACKGROUND

A.     Factual Background

Because this is a motion to dismiss, the Court "assume[s] the truth of the facts alleged in the complaint." *Flaa v. Hollywood Foreign Press Ass'n*, 55 F.4th 680, 685 (9th Cir. 2022) (quoting *Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 24 F.4th 1262, 1266 (9th Cir. 2022)).

Balmuccino is a California limited liability company doing business in Los Angeles, California.  Dkt. # 23 at 1.  Starbucks is a Washington corporation that conducts business worldwide.  *Id.*  As relevant to the motion at issue, over nine percent of Starbucks's retail stores are in California.  *Id.* at 4.

As alleged in the FAC, Balmuccino began developing a line of coffee-flavored lip balms in 2016.  *Id.* at 2.  In or about June 2017, Samantha Lemole, one of Balmuccino's principals, informed her brother-in-law, Mehmet Cengiz Öz (known professionally as "Dr. Öz"), of Balmuccino's search for a joint venture partnership.  *Id.*  Öz then notified Howard Schultz, Starbucks's then-CEO, of Balmuccino's concept and product.  *Id.*  In response, Schultz suggested that Balmuccino reach out to Mesh Gelman, Starbucks's Head of Product Development and Senior Vice President.  *Id.*  Starbucks then arranged for a meeting with Balmuccino at Starbucks's New York corporate offices.  *Id.*

On or about October 19, 2017, four Balmuccino representatives visited Starbucks's New York offices to meet with Gelman and Peter Ginsburg,[1] Gelman's assistant.  *Id.*  During the meeting, Balmuccino presented Gelman with a pitch deck and fully realized prototypes for the

---

[1] The FAC refers to Gelman's assistant as both "Ginsburg" and "Ginsberg."  Without clear guidance, the Court will refer to him as "Ginsburg" for consistency.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 2

lip balm line, designed specifically for Starbucks.  *Id.*  Gelman "extensively questioned" Balmuccino's team, making "detailed inquiries" into the concept and product.  *Id.* at 3.  In response, Balmuccino provided details about the product and the entire process, including the names and locations of the material suppliers and manufacturers involved in the development process.  *Id.*  Throughout the meeting, Ginsburg "took copious notes while Gelman listened intently."  *Id.*  When the meeting ended, Gelman asked if he could retain the pitch deck in order to "run the idea 'up the flagpole' and explore the possibility of a partnership or joint venture moving forward."  *Id.*

At the meeting, Balmuccino also requested that Gelman sign a non-disclosure agreement. *Id.* at 2.  Gelman declined to do so, stating, "that the meeting and the items discussed therein were completely confidential and that the relationship between [] Schultz and [] Öz, who had brokered the Meeting, should provide the necessary comfort and protections Plaintiff was seeking via the Non-Disclosure Agreement."  *Id.* at 2–3.  Two weeks later, and without mentioning the status of the pitch, Gelman informed Balmuccino that he was leaving Starbucks. *Id.* at 3.

In 2018, Balmuccino received notice that Starbucks had contacted one of its suppliers to request prototypes for Starbucks-branded lip balms and cases.  *Id.*  Balmuccino also learned that the prototype specifications provided by Starbucks to the potential manufacturer were identical to those that Balmuccino had presented to Gelman during the 2017 meeting.  *Id.*  Around April 2019, Starbucks announced the launch of "The S'mores Frappuccino Sip Kit," a kit of four liquid lipsticks/glosses to celebrate the return of its S'mores Frappuccino.  *Id.*  The promotion soon reached California, where it allegedly helped to drive Starbucks's product sales, thereby injuring Balmuccino (presumably—though Balmuccino does not say much on this point—by depriving Balmuccino of sales or royalty payments from Starbucks).  *Id.* at 4.

1

B.    Procedural History

2

On October 18, 2019, Balmuccino filed suit against Starbucks for breach of contract and

3

trade secret misappropriation in the California Superior Court for the County of Los Angeles.

4

*Id.*; *see also Balmuccino, LLC v. Starbucks Corp.*, No. 19STCV37444, 2020 Cal. Super. LEXIS

5

2811 (Cal. Super. Ct. June 23, 2020).  The court held that it lacked personal jurisdiction over

6

Starbucks and entered a Notice of Entry of Dismissal on July 17, 2020.  Dkt. # 23 at 5.  On

7

September 10, 2020, Balmuccino filed a Notice of Appeal with the California Court of Appeal.

8

*Id*.  The California Court of Appeal affirmed the Superior Court's dismissal of the case for lack

9

of personal jurisdiction on August 24, 2022, and issued its remittitur on October 26, 2022.  *Id.*;

10

*see also Balmuccino, LLC v. Starbucks Corp.*, No. B308344, 2022 WL 3643062 (Cal. Ct. App.

11

Aug. 24, 2022).

12

On October 21, 2022, five days before the remittitur was issued, Balmuccino filed suit in

13

this Court.  *See* Dkt. # 1.  On January 20, 2023, Starbucks moved to dismiss Balmuccino's initial

14

complaint under Federal Rule of Civil Procedure 12(b)(6).  Dkt. # 12.  In the motion, Starbucks

15

argued that Balmuccino lacks standing because its California LLC status was deemed inactive by

16

the State of California as of August 3, 2021.  *Id.* at 6.  Starbucks also argued that Balmuccino's

17

claims are time-barred and that at least two of its common-law claims are preempted under the

18

Washington Uniform Trade Secrets Act (UTSA).  *Id*.  Balmuccino did not oppose Starbucks's

19

first motion to dismiss.  *See generally* Dkt.  Instead, Balmuccino filed an amended complaint on

20

February 13, 2023, one business day after the deadline for doing so.  Dkt. # 15.

21

On February 21, 2023, the Court struck Balmuccino's amended complaint (Dkt. # 15) as

22

untimely and granted Starbucks's motion to dismiss without prejudice.  Dkt. # 17.  But as the

23

filing was only one day late, the Court found that it was not within the interests of justice to

24

dismiss the matter with prejudice and stated in the order that Balmuccino could move for leave to

1

2

file an amended complaint.  *Id.* at 2.  Balmuccino then filed an unopposed motion for leave to file a first amended complaint, which the Court granted on March 7, 2023.  Dkt. ## 19, 21, 22.

3

4

5

6

7

8

On March 9, 2023, Balmuccino filed its First Amended Complaint, asserting six causes of action against Starbucks: (1) breach of implied-in-fact contract; (2) breach of oral contract; (3) breach of confidence; (4) trade secret misappropriation under California's UTSA, Cal. Civ. Code §§ 3426–3426.11; (5) trade secret misappropriation under Washington's UTSA, RCW 19.108; and (6) trade secret misappropriation under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836.  Dkt. # 23.

9

10

11

On March 23, 2023, Starbucks filed a Rule 12(b)(6) motion to dismiss Balmuccino's First Amended Complaint.  Dkt. # 27.  Balmuccino responded on April 10, 2023, and Starbucks replied on April 14, 2023.  Dkt. ## 28, 30.

12

### III

13

### DISCUSSION

14

A.    Rule 12(b)(6) Motion to Dismiss

15

16

17

18

19

20

21

22

23

Under the Federal Rules of Civil Procedure, a defendant may move to dismiss a plaintiff's complaint if it "fails to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In considering a Rule 12(b)(6) motion, the Court "presumes that the facts alleged by the plaintiff are true," *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1309 (9th Cir. 1982), and will

24

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 5

construe the complaint in the light most favorable to the plaintiff.  *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc*., 416 F.3d 940, 946 (9th Cir. 2005).

B.      Choice of Law

        As a threshold matter, the parties disagree about whether California or Washington law controls in this case.  *See* Dkt. ## 27 at 12, 28 at 2.  As discussed below, because Washington law presumptively applies and Balmuccino has not proven that both an actual conflict of law exists and California has the more significant relationship to its claims, the Court rejects Balmuccino's request to apply California law and instead resolves this matter under Washington law.

        1.   Legal standard

        "When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law."  *Patton v. C*ox, 276 F.3d 493, 495 (9th Cir. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941)).  Under Washington State's choice of law rules, Washington law presumptively applies unless: (1) there is an effective choice of law by the parties to apply another state's law; (2) Washington law conflicts with federal law; or (3) there is an actual conflict between Washington law and the law of another state and the other state bears a more significant relationship to the claims.  *See Tilden–Coil Constructors, Inc. v. Landmark Am. Ins. Co*., 721 F. Supp. 2d 1007, 1013 (W.D. Wash. 2010) (presumption that Washington law applies); *Shanghai Com. Bank Ltd. v. Chang*, 189 Wash. 2d 474, 484–85, 404 P.3d 62 (2017) (effective choice of law); *Butler v. Nat'l Cmty. Renaissance of Cal*., 766 F.3d 1191, 1198 (9th Cir. 2014) (conflict with federal law); *Erwin v. Cotter Health Ctrs*., 161 Wash. 2d 676, 692, 167 P.3d 1112 (2007) (actual conflict of law).  Because the parties do not suggest that they effectively chose another state's law (say, by

contract) or that Washington law conflicts with federal law, it is this third exception—an actual

conflict with another state's laws—that is at issue here.

Under Washington State's choice of law rules, an "actual conflict" exists if the

Washington law is "fundamentally incompatible" with the other state's law. *Burnside v.*

*Simpson Paper Co.*, 123 Wash. 2d 93, 100, 864 P.2d 937 (1994). If a party establishes an actual

conflict for a tort or contract claim, Washington courts apply the "most significant relationships"

test to resolve the choice of law problem. *See Canron, Inc. v. Fed. Ins. Co.*, 82 Wash. App. 480,

492, 918 P.2d 937 (1996) (Washington courts apply the most significant relationships test to

contract claims); *Johnson v. Spider Staging Corp.*, 87 Wash. 2d 577, 580, 555 P.2d 997 (1976)

(Washington courts apply the most significant relationships test to tort claims). For contract

claims, the test requires courts to consider these contacts:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil[e], residence, nationality, place of incorporation and place of business of
> the parties.

*Canron*, 82 Wash. App. at 492 (quoting Restatement (Second) Conflict of Laws § 188(2)

(1971)). For tort claims, courts consider:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of
> the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

*Johnson*, 87 Wash. 2d at 581 (quoting Restatement (Second) Conflict of Laws § 145(2) (1971)).

In applying the test, Washington courts do not merely count contacts. *Id.* Rather, they evaluate

the contacts according to their relative importance, considering which contacts are most

significant and where they might be found. *Id.*; *see also* Restatement (Second) Conflict of Laws §§ 145, 188 (1971).

2. Actual conflict

Balmuccino says that the Court must engage in a choice of law analysis because there is an actual conflict between California and Washington law in their treatment of breach of confidence claims and equitable tolling.[2] *See* Dkt. # 28 at 2–3.

The Court is not convinced that Balmuccino's breach of confidence claim presents an actual conflict of law, as both the Washington and California UTSA preempt tort claims for breach of confidence when (as here) the breach of confidence claim arises out of the same nucleus of facts as a trade secret misappropriation claim.[3] *Compare Ed Nowogroski Ins., Inc. v. Rucker*, 88 Wash. App. 350, 445 n.5, 944 P.2d 1093 (1997) (affirming the Washington UTSA displaces conflicting tort laws pertaining to trade secret misappropriation.), *and* RCW 19.108.900(1) ("This chapter displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret."), *with K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (finding the California UTSA "preempts common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief'" (quoting *Digit. Envoy, Inc. v. Google, Inc.*,

---

[2] Despite its discussion of California's and Washington's statutory tolling policies, Balmuccino does not allege, and therefore has not shown, that there is an actual conflict with respect to California's and Washington's statutory tolling policies. *See generally* Dkt. # 28. The Court therefore does not address this issue.

[3] Balmuccino is correct that California recognizes a tort of breach of confidence. *See* Dkt. # 28 at 10; *see also Faris v. Enberg*, 97 Cal. App. 3d 309, 321 (1979). But while California courts continue to recognize the tort, California's UTSA still preempts breach of confidence claims if, as here, they are based on the same nucleus of facts as a trade secret misappropriation claim. *See K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 960 (2009) (finding appellant's breach of confidence claim preempted by their trade secret misappropriation claim).

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 8

370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)), *and* Cal. Civ. Code § 3426.7(b) (no exception for torts based on trade secret misappropriation).

There may, however, be an actual conflict of law between Washington's and California's equitable tolling doctrines.  In Washington, equitable tolling is permitted:

> [1] when justice requires.  The predicates for equitable tolling are [2] bad faith, deception, or false assurances by the defendant and [3] the exercise of diligence by the plaintiff.  In Washington equitable tolling is appropriate [4] when consistent with both the purpose of the statute providing the cause of action and the purpose of the statute of limitations.

*Millay v. Cam*, 135 Wash. 2d 193, 206, 955 P.2d 791 (1998) (internal citations omitted) (citing *Finkelstein v. Security Properties, Inc.*, 76 Wash. App. 733, 739–40, 888 P.2d 161 (1995); *Douchette v. Bethel Sch. Dist. No. 403*, 117 Wash. 2d 805, 812, 818 P.2d 1362 (1991)); *see also Fowler v. Guerin*, 200 Wash. 2d 110, 119, 515 P.3d 502 (2022) (reiterating the test provided in *Millay*).  In California, the requirements for equitable tolling are: "timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff." *Addison v. State of California*, 21 Cal. 3d 313, 319, 578 P.2d 941 (1978).

Washington's test thus contains an additional element—a "bad actor" requirement— which is not included in California's test for equitable tolling.[4]  Since Washington courts require satisfaction of an additional (and sometimes case-dispositive) element before equitably tolling a statute of limitations, there may be a conflict of law between California's and Washington's equitable tolling doctrines.  Thus, the Court will assume for the purposes of this motion that Balmuccino has established an actual conflict of law and proceed to the most significant relationships analysis to determine which state's laws apply.

---

[4] Balmuccino also asserts that *Fowler*'s "bad actor" requirement is new and thus "should not be retroactively applied" to its claims.  *See* Dkt. # 28 at 8.  This argument, however, misunderstands Washington case law, as *Fowler* merely reiterates the four-part test for equitable tolling established in *Millay*, 135 Wash. 2d at 206.  *See Fowler*, 200 Wash. 2d at 120; *see also* Section III.C(3).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

3.   Most significant relationships test

Assuming that Balmuccino has established an actual conflict of law, Washington law applies because Balmuccino has not shown that California bears a more significant relationship to its contract and tort claims.  Thus, the Court must apply Washington law to resolve this case.

a.   Contract claims

The most significant relationships test does not show that California has the more significant relationship to Balmuccino's contract claims.[5]  Since the pitch meeting between Balmuccino and Starbucks occurred in New York, the first two prongs of the test (place of contracting and place of negotiation of the contract) do not help decide whether Washington or California law applies.  Similarly, analysis of the fifth prong (the domicile, residence, nationality, place of incorporation and place of business of the parties) is a draw, as Starbucks is a Washington corporation and Balmuccino is registered in California.  Consequently, the Court's choice of law analysis is guided exclusively by the third and fourth prongs (place of performance and location of the subject matter of the contract).

In considering the third and fourth prongs, the Court finds that Washington, not California, has the more significant relationship to this case.  Because the contract concerned the sale of coffee-flavored lip balms by Starbucks, both the place of performance and the location of the contract's subject matter relate more to Washington.  According to the complaint, the implied-in-fact and oral contracts barred Starbucks from releasing coffee-flavored lip balms without compensating Balmuccino or obtaining its consent.  Dkt. # 23 at 6–7.  As a Washington-based company, Starbucks's Washington employees would have performed the contract or breached the contract in Washington.  At minimum, these factors do not rebut the presumptive

---

[5] The complaint asserts that the parties entered an "implied-in-fact" contract and an "oral contract," not that the parties formally signed a written contract.  Dkt. # 23 at 5–7.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 10

application of Washington law.  *See Tilden–Coil Constructors*, 721 F. Supp. 2d at 1013 (unless there is both an actual conflict and the other state bears a more significant relationship to the claims, "Washington law presumptively applies").  Starbucks's "sizeable retail presence in California," *see* Dkt. # 28 at 9, also does not rebut this presumption, as this fact does not tie the place of performance or location of the contract's subject matter to California more than any other state in which Starbucks has significant operations.

The California courts' dismissal of this case for lack of personal jurisdiction also cuts strongly against Balmuccino's argument that California has the more significant relationship to its claims.  As relevant here, the California Court of Appeal concluded that the alleged points of contact between Starbucks and California did not "involv[e] the subject of this lawsuit" nor demonstrate that "the alleged trade secret misappropriation 'arises out of or relates to' Starbucks's contacts with California."  *Balmuccino*, 2022 WL 3643062, at *5.  The court added that "there is no forum-related activity or occurrence by Starbucks that took place in California," as "[t]he uncontroverted evidence before us is that the Sip Kit lip glosses, as well as the entire promotional campaign, were created, developed, and launched in Washington, not California."  *Id.*

In light of these findings, Balmuccino has not overcome the presumptive application of Washington law.  *See Tilden–Coil Constructors*, 721 F. Supp. 2d at 1013.  Since the Court is not convinced that California bears the more significant relationship to this case, it declines to apply California law to Balmuccino's contract claims.

b.  Tort claims

The most significant relationships test also shows that Washington law should govern Balmuccino's tort claims.  The third and fourth prongs of the most significant relationships test for tort claims (the domicile, residence, nationality, place of incorporation and place of business

of the parties and the place where the relationship, if any, between the parties is centered)
provide little help here: Starbucks is a Washington corporation, Balmuccino is registered in
California, and the relationship between Starbucks and Balmuccino does not appear to be
centered in any one location.  Therefore, the tort choice of law analysis is guided by the first and
second prongs (the place where the injury occurred and the place where the conduct causing the
injury occurred).

In considering the first and second prongs in light of their relative importance, the Court
finds that Washington, not California, has the more significant relationship to Balmuccino's tort
claims.  Although Balmuccino's alleged injury occurred in California, Washington was the place
where the conduct causing the injury occurred.  *See Balmuccino*, 2022 WL 3643062, at *5
("[t]he uncontroverted evidence before us is that the Sip Kit lip glosses, as well as the entire
promotional campaign, were created, developed, and launched in Washington, not California.").
Because this action centers on Starbucks's alleged misconduct, the Court views the "place where
the conduct causing the injury occurred" to be a more significant contact than "the place where
the injury occurred."  *See*, *e.g.*, *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 552 (W.D. Wash.
2008) (finding that the place of injury is of less importance than the place where the conduct
causing the injury occurred, especially when the defendant's conduct caused harm in multiple
states); *Bryant v. Wyeth*, 879 F. Supp. 2d 1214, 1221–22 (W.D. Wash. 2012) (finding that in
cases of fraud and misrepresentation, the place of injury is often fortuitous and thus of lesser
importance than the place where the conduct causing the injury occurred); *White v. Symetra
Assigned Benefits Serv. Co.*, No. 20-1866 MJP, 2022 WL 2983943, at *4 (W.D. Wash July 28,
2022) (finding the location where the conduct causing the injury occurred to be more important
because plaintiffs' claims focus on defendants' conduct arising out of Washington).  The Court is

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 12

thus not convinced that California bears the more significant relationship to Balmuccino's tort claims so will resolve the entirety of this matter under Washington law.

C.      Dismissal of the Claims as Time-Barred

It is uncontested that all of Balmuccino's causes of action have a three-year statute of limitations period.  *See generally* Dkt. # 28; *see also* Dkt. # 27 at 16–17; RCW 4.16.080(3); RCW 4.16.080(2); Cal. Civ. Code § 3426.6; RCW 19.108.060; 18 U.S.C. § 1836(d).  It is also uncontested that Balmuccino filed suit in this Court more than three years after learning of Starbucks's alleged trade secret misappropriation.[6]  *See generally* Dkt. ## 23, 27, 28.

Since Balmuccino filed this action after the applicable statutes of limitations expired, all of Balmuccino's claims are time-barred unless Balmuccino can prove that the statutes tolled. Even reading Balmuccino's complaint with the required liberality, as discussed below, the Court concludes that Balmuccino is not entitled to statutory or equitable tolling under Washington law. Thus, the Court must dismiss Balmuccino's First Amended Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

1.   Legal standard

To decide whether an action is time-barred, the Court "must determine whether the running of the statute is apparent on the face of the complaint." *Bakalian v. Cent. Bank of Republic of Turkey*, 932 F.3d 1229, 1233 (9th Cir. 2019) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).  When a party brings a motion to dismiss based on the running of the statute of limitations, the motion may be granted "if the assertions of the

---

[6] The FAC provides two potential dates for when Balmuccino allegedly learned of Starbucks's trade secret misappropriation: 2018 (discovery that Starbucks contacted one of its suppliers) and April 2019 (discovery of the Sip Kit launch).  Dkt. # 23 at 3.  Balmuccino does not specify which date it wishes the Court to use for the purposes of this motion.  *See generally id*; *see also* Dkt. # 28.  But even under the more generous reading of the complaint (i.e., assuming that Starbucks's misconduct was discovered in April 2019), all of Balmuccino's claims are time-barred under the applicable statutes of limitations as the three-year period would have lapsed in April 2022 and this action was not filed until October 2022.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 13

complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see also Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995) ("[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim."). A statute of limitations may be tolled statutorily or via the jurisdiction's equitable tolling doctrine.

2. Statutory tolling

Balmuccino is not entitled to statutory tolling under Washington law. *See Miles v. Shanghai Zhenhua Port Mach. Co., Ltd.*, No. C08-5743 FDB, 2009 WL 5067513, at *2 (W.D. Wash. Dec. 17, 2009) ("In diversity actions, federal courts generally apply state statutes related to the commencement and tolling of statutes of limitations."). In Washington, statutory tolling is governed in part by RCW 4.16.170 and RCW 4.16.180. *See Dowell Co. v. Gagnon*, 36 Wash. App. 775, 776, 677 P.2d 783 (1984). As relevant here, RCW 4.16.170 reads:

> For the purpose of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first. If service has not been had on the defendant prior to the filing of the complaint, the plaintiff shall cause one or more of the defendants to be served personally, or commence service by publication within ninety days from the date of filing the complaint. If the action is commenced by service on one or more of the defendants or by publication, the plaintiff shall file the summons and complaint within ninety days from the date of service. If following service, the complaint is not so filed, or following filing, service is not so made, the action shall be deemed to not have been commenced for purposes of tolling the statute of limitations.

Balmuccino asserts that "[p]ursuant to RCW 4.16.170, the timely filing of a complaint, coupled, as here, with the timely service of summons, tolls the running of the statute of limitations as of the date of filing, on October 18, 2019." Dkt. # 28 at 6. But Balmuccino misunderstands the statute. As interpreted by the Washington courts, the commencement of another action, even involving the same purpose and the same parties, does not statutorily toll the limitations period in

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 14

Washington. *Dowell*, 36 Wash. App. at 775–76; *see also Masse v. Clark*, No. C06-5375 RBL-KLS, 2007 WL 1468820, at \*7 (W.D. Wash. May 18, 2007) ("The tolling provisions of RCW 4.16.170 do not apply to previously filed actions."). This is because "the complaint" in RCW 4.16.170 refers to *the* complaint "filed in the action before the court, not *a* complaint independently filed." *Dowell*, 36 Wash. App. at 776. Since the relevant complaint here for RCW 4.16.170 purposes was filed by Balmuccino on October 21, 2022 (Dkt. # 1), Balmuccino has not shown that RCW 4.16.170 tolled the statutes of limitations as of October 18, 2019. Nor does Balmuccino allege that its claims are statutorily tolled by RCW 4.16.180. *See generally* Dkt. # 28. The Court thus rejects Balmuccino's assertion that its claims are timely due to statutory tolling.

3. Equitable Tolling

Balmuccino is not entitled to equitable tolling under Washington law.[7] Washington courts apply equitable tolling:

> [1] when justice requires. The predicates for equitable tolling are [2] bad faith, deception, or false assurances by the defendant and [3] the exercise of diligence by the plaintiff. In Washington equitable tolling is appropriate [4] when consistent with both the purpose of the statute providing the cause of action and the purpose of the statute of limitations.

*Millay*, 135 Wash. 2d at 206 (internal citations omitted) (citing *Finkelstein*, 76 Wash. App. at 739–40; *Douchette*, 117 Wash. 2d at 812); *see also Fowler*, 200 Wash. 2d at 119 (reiterating the test provided in *Millay*). The party asserting equitable tolling bears the burden of proof. *See Price v. Gonzalez*, 4 Wash. App. 2d 67, 75, 419 P.3d 858 (2018). Although equitable tolling is

---

[7] Balmuccino is also not entitled to equitable tolling for its federal claim (trade secret misappropriation under the DTSA) based on federal tolling law. Balmuccino did not raise its federal claim until March 9, 2023, at least 11 months after the statute of limitations expired. *Compare* Dkt. # 23 at 11, *with* Dkt. # 1, *and Balmuccino*, 2022 WL 3643062. As Balmuccino's federal claim was untimely, and federal equitable tolling principles do not extend to "garden variety claim[s] of excusable neglect," *see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), Balmuccino is not entitled to relief based on the federal equitable tolling doctrine.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 15

permitted in Washington, its courts have "cautioned against broadly applying equitable tolling in a manner that 'would substitute for a positive rule established by the legislature a variable rule of decision based upon individual ideas of justice.'" *Fowler*, 200 Wash. 2d at 119 (quoting *Leschner v. Dep't of Lab. & Indus.*, 27 Wash. 2d 911, 926, 185 P.2d 113 (1947)).  As a result, Washington "[c]ourts typically permit equitable tolling to occur only sparingly" and decline to extend it to "garden variety claim[s] of excusable neglect." *Benyaminov v. City of Bellevue*, 144 Wash. App. 755, 761, 183 P.3d 1127 (2008) (quotation marks omitted) (quoting *State v. Duvall*, 86 Wash. App. 871, 875, 940 P.2d 671 (1997)).

Balmuccino has not satisfied the standard for equitable tolling in Washington.  As stated above, one "predicate[]" for equitable tolling is "bad faith, deception, or false assurances by the defendant." *Fowler*, 200 Wash. 2d at 119 (citing *Millay*, 135 Wash. 2d at 206).  Washington courts construe this requirement as a fairly strict precondition for equitable tolling.  In *Fowler*, the Washington Supreme Court observed that it had "explained [in *Douchette*] that the plaintiff was not entitled to equitable tolling because she 'failed to act diligently in pursuing her legal remedy' *and* because she 'failed to show bad faith, deception or false assurances on the part of the [defendant].'" *Id.* at 123 (emphasis in original) (quoting *Douchette*, 117 Wash. 2d at 812).  The Washington Supreme Court then stated that its decision in *Douchette* "clarified that proof of both predicates is necessary to justify equitable relief: 'In the absence of bad faith on the part of the defendant and reasonable diligence on the part of the plaintiff, equity cannot be invoked.'" *Id.* (quoting *Douchette*, 117 Wash. 2d at 812).  The Washington Supreme Court concluded by observing that

> [t]he four-part standard set forth in *Millay* remains the standard for equitable tolling of statutes of limitations in civil actions under Washington law. Washington courts must evaluate *each part* of this standard in light of the particular facts of each case and should equitably toll the applicable statute of limitations only when *all four parts* of the *Millay* standard are satisfied.

*Id.* at 124–25 (emphasis added).

Balmuccino does not allege—in either its First Amended Complaint or in its response to Starbucks's motion to dismiss—that Starbucks acted in bad faith, engaged in deception, or made any false assurances. *See generally* Dkt. ## 23, 28. Accordingly, Balmuccino has not satisfied one of the predicate conditions for equitable tolling under Washington law. *See Fowler*, 200 Wash. 2d at 123. Balmuccino also cites no case in which a Washington court equitably tolled a statute of limitations under Washington's equitable tolling doctrine based on the filing of a complaint in another lawsuit. The Court thus rejects Balmuccino's assertion that its claims are timely due to equitable tolling.

Rather than argue that Starbucks indeed acted in bad faith, Balmuccino argues that Washington courts previously applied a different equitable tolling standard which did not include a "bad actor" requirement. *See* Dkt. # 23 at 8 ("*Fowler*'s 'bad actor' requirement should not be retroactively applied."). This argument, however, relies on a false premise. Contrary to Balmuccino's claim, *Fowler* did not establish a new standard for equitable tolling in Washington. Rather, the case "reiterat[ed] the four conditions" for equitable tolling which the courts have applied "consistently" since *Millay*, a 1998 Washington Supreme Court case. *Fowler*, 200 Wash. 2d at 113, 120. Balmuccino's citation to and reliance on federal district court cases before *Fowler* is also mistaken, as the cited cases involve the courts applying *federal* tolling law to federal claims, not *Washington* tolling law to claims brought under Washington law. *See e.g.*, *Abeyta v. BNSF Ry Co.*, No. 2:17-CV-0350-TOR, 2018 WL 327283 (E.D. Wash. Jan. 8, 2018) (employee brought action under Federal Employers' Liability Act); *Nelson v. United States*, No. C05-643JLR, 2005 WL 1838620 (W.D. Wash. Aug. 1, 2005) (individual filed petition to quash IRS summons); *Figueroa v. BNSF Ry. Co.*, 275 F. Supp. 3d 1225 (E.D. Wash.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 17

2017) (employee brought action under Federal Employers' Liability Act). It is therefore not "retroactive" or otherwise improper for the Court to apply *Fowler*'s four-part equitable tolling test to Balmuccino's claims.

As a final matter, Balmuccino draws on California's more forgiving tolling law to argue that declining to toll the statutes of limitations during the pendency of the state-court action is bad public policy. Balmuccino may have a point that requiring a plaintiff to concurrently file separate actions in two different jurisdictions is inefficient and laborious. *See* Dkt. # 28 at 6. Yet this is the tolling policy that Washington has apparently adopted. *See Dowell*, 36 Wash. App. at 776 (for statutory tolling under RCW 4.16.170, "'[t]he complaint' is the one filed in the action before the court, not *a* complaint independently filed."); *Abear v. Teveliet*, No. C06-5550 RBL, 2006 WL 3813560, at *2 (W.D. Wash. Dec. 21, 2006) ("[RCW 4.16.170] says literally nothing about the effect of a timely, earlier filing on the limitations period applied to a second action regarding the same subject matter."); *Fowler*, 200 Wash. 2d at 123–25 ("bad faith, deception or false assurances" by the defendant is a predicate for equitable tolling in Washington). Whatever can be said of the various policy arguments, the Court must follow and apply Washington State's tolling laws, as interpreted by Washington courts, to Balmuccino's claims.

Balmuccino's policy argument is also weakened by its decision not to file suit elsewhere after the California Superior Court dismissed its claims for lack of personal jurisdiction. Even assuming that Balmuccino reasonably asserted personal jurisdiction in California at the outset of litigation, Balmuccino was on notice that it might need to file elsewhere at least as of June 2020, when the California Superior Court dismissed its claims for lack of personal jurisdiction. That Balmuccino knew, or should have known, that it might need to file elsewhere prior to the

expiration of the limitations periods lessens the force of its policy argument that it would be unfair or redundant to have to concurrently file multiple suits in multiple jurisdictions.

Aside from arguing that *Fowler*'s four-part equitable tolling test is novel (it is not) and that Washington's tolling law reflects poor public policy, Balmuccino provides no other argument for why it is entitled to equitable tolling under Washington law.  The Court therefore must grant Starbucks's motion to dismiss Balmuccino's claims as time-barred, as the assertions of the First Amended Complaint, even when read with the required liberality, do not permit Balmuccino to prove that the statute was tolled.  *See Jablon*, 614 F.2d at 682.

D.    Leave to Amend

"As a general rule, when a court grants a motion to dismiss, the court should dismiss the complaint with leave to amend."  *CyWee Grp. Ltd. v. HTC Corp.*, 312 F. Supp. 3d 974, 981 (W.D. Wash. 2018); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (policy favoring leave to amend should be applied with "extreme liberality").  "In determining whether dismissal without leave to amend is appropriate, courts consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment."  *CyWee Grp. Ltd.*, 312 F. Supp. 3d at 981 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "A district court does not err in denying leave to amend where the amendment would be futile."  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Similarly, if there are no other facts consistent with the challenged pleading that could possibly cure the deficiency, dismissal with prejudice is

appropriate.  *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

The Court declines to offer further leave to amend.  Since Balmuccino's claims are time-barred under Washington law, the Court does not see how Balmuccino could possibly allege other facts to cure this deficiency.  Although Balmuccino states that it would be "premature" to bar further amendment, it does not provide any other information to support its claim.  *See* Dkt. # 28 at 12.  Thus, the Court finds that granting leave to amend would be futile.

Moreover, two other *Foman* factors support denying leave to amend: Balmuccino has repeatedly failed to cure deficiencies in its complaint and Starbucks has experienced prejudice based on Balmuccino's undue delays.  The Court previously granted Balmuccino leave to amend, but the amended complaint failed to cure these deficiencies.  *See King v. Select Comfort Corp.*, 824 F. App'x 532, 533 (9th Cir. 2020) (district court did not abuse its discretion when it dismissed plaintiffs' third amended complaint under Rule 12(b)(6) with prejudice).  And while Balmuccino is correct that Starbucks had timely notice of the suit due to Balmuccino's continuous legal action against Starbucks, Starbucks may still be prejudiced by Balmuccino's delays as well as the fact that multiple years have elapsed since the alleged events occurred.  *See Mansfield v. Pfaff*, No. C14-0948JLR, 2014 WL 3810581, at *4 (W.D. Wash. Aug. 1, 2014) ("Whether there has been 'undue delay' should be considered in the context of (1) the length of the delay measured from the time the moving party obtained relevant facts; (2) whether discovery has closed; and (3) proximity to the trial date." (citing *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798–99 (9th Cir. 1991)); *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (Supreme Court found plaintiffs' two-year delay in filing the amended complaint relevant to denying leave to amend); *Douchette*, 117 Wash. 2d at 813 (court found prejudice "arising from the fact that 3 years have elapsed since the events at issue

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 20

occurred").  Based on these factors, the Court declines to grant leave to amend and dismisses Balmuccino's claims with prejudice.

E.      Other Arguments

Besides asserting that Balmuccino's claims are time barred, Starbucks raises two additional grounds for dismissal in its motion.  Dkt. # 27 at 7.  Starbucks states that the Court should: (1) dismiss Balmuccino's common-law breach of confidence claim (third cause of action), as it is preempted under the Washington UTSA; and (2) strike Balmuccino's request for punitive damages because the requested punitive damages are not recognized under Washington law.  *Id.*  Because the Court is dismissing all of Balmuccino's claims on timeliness grounds, it need not address Starbucks's additional arguments.

**IV**

**CONCLUSION**

For the reasons above, the Court GRANTS Starbucks's Motion to Dismiss (Dkt. # 27) and DISMISSES Balmuccino's First Amended Complaint with prejudice.

Dated this 26th day of July, 2023.

John H. Chun
United States District Judge

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT - 21